Good morning, Your Honors. May it please the Court, Devin Terrio-Orr for Eros Baca with me on the briefs and at council table is Mr. Robert Powell. I'd like to reserve five minutes of my time for rebuttal. I'd like to make three points this morning with you today. First, I'd like to step back a little bit and look at the big picture of the case to try to explain why it is that this Court should grant relief and why the Board's decision to ignore the gubernatorial pardon was an abuse of discretion. The second thing I'd like to talk about briefly is why the Board's decision on the direct appeal that the pardon defense was categorically a CIMT is incorrect as a matter of law. And finally, I'd like to talk about the second petition for review on the denial of the motion to reopen and discuss in a little bit more detail why the pardon is relevant to this case and why the Court should grant relief. So first, on the big picture question, why is it that the CIMT issue remains relevant in this case? Well, the purpose of judicial review of agency action is, of course, to correct agency legal errors. And here, the decisions here are deeply flawed, and we're asking the Court to put the petitioner in the same position he was, status quo ante, before he submitted his application for relief. A remand to the IJ is required here to allow him to submit a cancellation of removal application because as things stand, the Board has incorrectly held that he has been convicted of a crime involving moral turpitude and that he is inadmissible to the United States for that offense. So, counsel, is your argument that at the time of the BIA decision, the decision was wrong? Yes, because the Oregon offense of trademark counterfeiting is not categorically a crime involving moral turpitude. The offense is quite clearly different than the same offense considered by this Court in Tall v. McCasey arising out of California. The California Penal Code, Section 350A, reaches, I was going to discuss this later, but I can discuss it now, reaches, quote, one who willfully manufactures, intentionally sells,  That's Section 350A of the California Penal Code. The Oregon statute is a strict liability offense. It reaches someone who knowingly and with the intent to sell or distribute, and that's the key feature of the statute that distinguishes it from Tall, because you just have to have an intent to distribute. You don't have to have an intent to sell to be punished in Oregon. And it also reaches displaying, advertising, distributing, or possessing a counterfeit of a mark. So it's much broader than the California statute. You could be convicted of trademark counterfeiting in Oregon for, as we discussed in the brief, walking down the street offering free samples of counterfeit Ralph Lauren cologne. That would be trademark counterfeiting in Oregon. But isn't the rationale, I'm not sure I agree with it, but isn't the rationale for finding fraud in these trademark counterfeiting knockoff cases that it's a fraud on the holder of the mark rather than a fraud on the recipient of the goods? And any time you distribute or even have a knockoff, that constitutes a fraud against the holder of the mark? I don't believe so, Your Honor. I think that if you look at the decision in Tall, it was a critical point that the California statute reaches conduct that involves an intent to sell, because that's the thing that you're defrauding the owner of the mark from. If there's no sale, then the owner of the mark is not being defrauded of anything. There's no payment that's, there's no transaction that's happening. So, I mean, I think that's the critical difference here. And I think that, you know, that's why the decision on the direct appeal was incorrect. You know, and going back to the big picture just briefly, I just want to point out that as things stand right now, the highest administrative body, the representative of the Attorney General, has held that Mr. Baca remains inadmissible for this offense. And regardless of the outcome of the removal proceedings here, that is going to have lasting consequences for Mr. Baca. In particular, the Section 1103A1 of Title VIII specifies that a, quote, determination and ruling by the Attorney General with respect to all questions of law shall be controlling. So that means that as things stand now, if Mr. Baca were to apply for a visa, whether it be an immigrant visa or a nonimmigrant visa to come back as a student, he would be inadmissible to the United States, notwithstanding the pardon. That's clearly wrong. So the court needs to grant the petition here. I just mentioned that the second point that I was going to make, which is that the direct appeal on the direct appeal, the decision was incorrect because the offense is not categorically a CIMT. Counsel, the theory is that merely possessing counterfeit items is inherently theft. So why doesn't that make the Oregon statute categorically a crime involving more turpitude? That's what we said in the Tall case. Merely possessing counterfeit goods, knowing that they're counterfeit, is inherently a theft offense. I think that the decision in Tall is slightly distinguishable with all due respect. I think that the decision in Tall did not address possession because the statute in California involves knowing possession for sale. That's the words of the statute. So you have an intent to sell in that situation, which is different than in Oregon. If we were to do modified categorical, what do we know based on modified categorical? Well, Your Honor, our position is that that's not something that this court should do in the first instance. There's a decision that we cited in our opening brief on the issue. Basically, if the BIA hasn't done the modified categorical in the first instance, it needs to be manned back to the board to let them do it in the first instance. And so let me make sure I understand your theory. Your theory is that mere possession of a knockoff is not fraud. And I re-read Tall. Tall involves a changing of hands. Yes, Your Honor, that's correct. That's our argument. Okay. Just to point out briefly the last point on the second of my three points is that the court's review of the BIA's interpretation of Oregon law is, of course, entitled to no deference because it is de novo review. The board does not have expertise in interpreting state law. The final issue I'd like to discuss and to spend the balance of my time on opening here on is the pardon. And, you know, this is a very rare thing to happen in immigration law. Mr. Baca received an unconditional pardon from Theodore Kolongoski, the governor of Oregon, and the board essentially just declined to consider it entirely. That constitutes an abuse of discretion. The court should clarify the earlier decision in Aguilera-Montero v. McCasey for two different reasons. First of all, to address the board's longstanding position going back to right after the INA was enacted in 1952, applying the pardon waiver provision equally to grounds of what were then excludability and what are now known as inadmissibility as it does to grounds of deportation. These are longstanding published board decisions that have never been modified by the agency and which were not addressed in that decision. Well, and the board didn't address the effect of the pardon. It said that we need not address the effect of the pardon because he lacked a qualifying relative. That's what the board said, Your Honor. You know, our position is that there's no evidence in the record regarding the qualifying relative. The immigration judge pretermined the application before it was submitted. So the only, you know, the first reference you see to this is in a brief filed by the trial attorney before the immigration court saying he doesn't have a qualifying relative. Well, he hadn't been required to file the application yet because the judge had specifically set the application call-up date out to brief this issue in the CIMT. Did you address that point in your opening brief? Address which point? I'm sorry. The point about the qualifying relative and why the BIA could not rely on that as a basis for denying relief. Did you address that in your opening brief? I'll look in the brief and I can address that on rebuttal, Your Honor. So the second reason that the court should address or reconsider the decision in Aguilar-Montero is to address the impact of Padilla v. Kentucky, which obviously was not around at the time that the court decided Aguilar-Montero. So first, on the pardon waiver provision, this originates all the way back from the original 1952 Act, Public Law 82-414. It was originally codified in Section 241B, and it, as written, only reached deportation grounds. It didn't reach any grounds of inadmissibility arising from criminal offenses. And as written, it's moved around a lot, but the primary text has remained the same throughout the past nearly 60 years now, despite numerous amendments. Well, do you think we can resolve the pardon issue since the board didn't consider it? Well, I think that the court should, at a minimum, clarify Aguilar-Montero because that decision... Well, that's the same thing as resolving the pardon issue. They didn't consider it, which you may be right. They should have considered it, or their reason for considering it is wrong, but at the most, wouldn't we have to return that issue to the board? Certainly the court could do that. I think that the Padilla issue in particular is one which could really do with some clarification from the Ninth Circuit on it. Oh, a lot of things could do with clarification from us. That's true. But can we really clarify it before the board considers the issue? I think if the court wanted to remand the issue to the board to address, specifically to address, the impact of the prior decisions from 53 and 54, I think that would be appropriate. But we could also deny relief on the basis that the board had a reason for denying relief because of the lack of qualifying relative that was not challenged here on appeal. Well, Your Honor, the application... There was no factual finding on this issue. There's no factual finding. But you could have pointed all of that out in your brief, but you didn't. I can address that on rebuttal if I may. So just briefly, the board's decisions in matter of H and matter of EB from 53 and 54 both reject the arguments advanced by the board in several unpublished decisions recently, basically saying that it would be illogical to ascribe to Congress the intent to punish someone who receives a pardon and happens to travel outside the United States after receiving the pardon. It doesn't make any sense to ascribe to Congress a different intent, to ascribe the intent to punish someone in that circumstance. Do you want to save time for rebuttal? Yes, I do, Your Honor. I can address Padilla on my rebuttal. Thank you so much. Good morning, Your Honors. May it please the Court. Laura Halliday Hicken for Attorney General Eric Holder. In any removal proceeding, the initial question is whether the alien is removable. Here, Petitioner is indisputably removable for having entered illegally. The next question is whether the alien is then eligible for relief. Here, Petitioner is ineligible for cancellation or removal because he lacks a qualifying relative. How do you know he lacks a qualifying relative? Petitioner had not, well, initially Petitioner had asked for multiple extensions of time to file the cancellation or removal application. What he did file, as opposed to the application, was a motion to dismiss the CIMT charge. The government responded to that motion with a motion to pre-termit and oppose dismissing the CIMT charge. Petitioner then filed a reply to the government's motion to pre-termit. This is standard practice. And in that motion, or in his response, he failed to address the qualifying relative aspect. He did not contest it. Therefore, he didn't raise a factual dispute. There was no need to go forward finding facts. When he failed to address, the government put him on notice that the lack of a qualifying relative was a grounds of ineligibility that they were pursuing, along with the CIMT. He, in his response, only addressed the CIMT charge. If he wanted to advise the court that he possessed the qualifying relative necessary, that was his opportunity to do so. He also could have done so before the board in his brief. He also could have done so in his motion to reopen before the board, where the only grounds he challenged was the CIMT. Now, whose burden is it to show lack of qualifying relative? The petitioner bears the burden of establishing he's eligible for cancellation of removal. It's his burden to prove that he meets the requisite elements, one of which is a qualifying relative. The petitioner failed to allege at any juncture, and even now, has never alleged that he actually has the qualifying relative necessary. And because he failed to exhaust and waived any challenge to the lack of a qualifying relative, he's ineligible for cancellation of removal on that basis alone. And the government submits. It's besides the point, ultimately, to get into the arguments about the CIMT, because petitioner cannot prevail on his petition, because he failed to establish that he had the requisite qualifying relative. If he had done so, if petitioner had alleged in response to the government's motion to pretermit, no, I have a qualifying relative. I am not ineligible on that grounds. There would have been a factual question. Now, was the government's motion to pretermit based upon a lack of qualifying relative? It was based upon two grounds, that he had committed a CIMT and that he lacked a qualifying relative. And that's explicit on the government's motion to pretermit. That's page 272 of the record. The last two sentences specifically indicate that they are pursuing ineligibility on lack of a qualifying relative. Petitioner's failure to raise or challenge that issue before the immigration judge, before the board, before the board in his motion to reopen, or even before this court, means he has fully failed to exhaust and waived any challenge to that ineligibility ground. And as Your Honor noted, it is his burden to do so. So here, because petitioner is removable, based on... On what basis did the government make a motion to pretermit based on the lack of a qualifying relative? At that stage, what should he have done? All he would have had to do at that stage is make... No, no, I mean, how did the government know there was no qualifying relative? Well, you'll see on page 201, the only mention of a qualifying relative was that he was intending to get married. And then on page 202, the immigration judge specifically requested proof of the marriage, which was supposedly happening the next week. There was no proof of the marriage ever submitted. So the government, realizing that no proof had been submitted in its motion to pretermit, included the lack of a qualifying relative. Petitioner did not contest that ineligibility ground, and thus there was no factual dispute. It simply wasn't contested. This is not a case where a petitioner can point to any instance where he alleged that he had said, no, no, wait, I have a qualifying relative, let me submit this, or just simply made the allegation that he had it. I guess what I'm trying to find out is under what procedure is the petitioner supposed to say I have a qualifying relative? At what stage is he supposed to do that? He has to be eligible for the relief that he seeks at the outset when he is applying for this relief. If he had alleged in his response to the motion to pretermit, no, but I am getting married in a week, I need to have a factual hearing on this matter, then that would have been preserved. It simply wasn't. And he had an opportunity to file the cancellation removal application. It was extended multiple times. Indeed, on page 297 in one of the extensions, the immigration judge called the application long awaited. It clearly had been in the works, and the court had been waiting. The immigration judge had been waiting for it. And then ultimately what transpired was the motion to dismiss the CMT charge, the government's motion to pretermit, and petitioner's response to the government's motion to pretermit where he failed to allege that he was not ineligible based on the lack of a qualifying relative. It was petitioner's burden to do so. And he had multiple opportunities before the agency at the time of the motion to pretermit, before the board on direct appeal, and in his motion to reopen. Indeed, petitioner moved to reopen, alleging that he did not commit a CMT based exclusively on the pardon information. But he did not say, and also, I have a qualifying relative. That would be changed circumstances. That could potentially mean that the motion would be reopened, that the proceedings would be reopened on the motion. And he did not do so. There's been no allegation that this qualifying relative exists. And he simply, there's no basis to reverse the board's finding that he failed to establish that he had the qualifying relative, or at least make it a contested issue. It's petitioner's burden. The government put him on notice that that was one of the grounds of ineligibility it was pursuing as, with regard to cancellation of removal. So petitioner's arguments at this point regarding the CIMT and the pardon are ultimately beside the point. They cannot dispose of the issues in this case, because petitioner failed to exhaust and waive any challenge to his removability on the basis of his illegal entry and his ineligibility for cancellation of removal on the basis of his lack of a qualifying relative. Because those grounds must be sustained, because they're unchallenged. There is no, it's unnecessary, and as our brief points out, to reach any of these further issues about whether or not the alternate ground, you know, and it's important, I will mention, I just want to clarify, the board did not sustain the inadmissibility ground in the removal context. The board, in its conclusion on page 75, it clearly sustained only the removability charge of illegal entry, because that was uncontested, and it's remained uncontested throughout the proceedings. So the board relied only in the removal context, where the government bears the burden, on his illegal entry. Then considered in his eligibility for cancellation two alternative grounds of ineligibility, his lack of a qualifying relative and his commission of a CIMT. And so those were two alternative bases in the relief context, where a petitioner bears the burden for establishing his eligibility. You know, this case is a difficult case in part, as I'm sure you recognize. There are a lot of people in this country who, on all kinds of grounds, shouldn't be here. They've done bad things. They've not only come in illegally, but once here they do really bad things. There are an awful lot of other people in this country who are here illegally, who are hardworking, pay taxes, and so on. The government has limited resources to go after people, to seek removal, and so on. I'm somewhat puzzled as to why the government decided to go after this particular person. Congress has set forth a number of reasons why people are aliens are removable and why they're ineligible. One is illegal entry. That's undisputed. I understand that. So I'm asking you, as among all of the people who have illegally entered, why are you going after this particular person? Well, DHS has prosecutorial discretion, and I want to just say that's their realm and their decision. But here, the petitioner committed a CIMT. We assert that the board's holding, although it's unnecessary to reach, is proper. This was a crime of moral turpitude, and that when he pled... Well, I think it's arguable whether it's actually a crime involving moral turpitude. Or if it is, it's such that... I mean, it's a very rare, quote, crime that you can get the governor of the state to pardon. And we all know what it is. He buys two knockoff watches. He puts one up on eBay describing it accurately. He's certainly not trying to defraud the seller. I assume that he, like most young people, doesn't have a very clear understanding as to what the various intellectual property rules are. I mean, he bought it knowing it was a fake. He's now... There are lots of evil things in this world. This doesn't rank very high on the list. Well, those are obviously petitioner's contentions, but our position is that the board was correct in finding both that he lacked a qualifying relative and that he committed a CIMT. Let me ask you this on the legal question of CIMT. As to the categorical approach, is it your position that mere possession of a knockoff is a crime involving moral turpitude? It's our position that the Oregon statute does not criminalize mere possession. It says that its intent... fraudulent, knowingly possess... Excuse me. That the person knowingly and with the intent to sell or distribute does a certain number of things. And it's knowingly with the intent to sell or distribute. Petitioner's argument that distribution could be done freely, by his logic, if you look at the California statute in Tull, in that case, what was also criminalized was willful manufacturing. Manufacturing doesn't necessarily require a commercial element. You could freely manufacture in the same way you could freely distribute. But the court didn't find that that eliminated a categorical application. The court found that that statute inherently involves fraud, either fraud of the innocent buyer and the owner of the mark, or the owner of the mark. And here, as the board found, there's no realistic probability that the Oregon statute would be applied in a way that would fall outside the categorical approach. That's petitioner's burden here. He has the burden to prove that he's eligible and the burden here to prove that this is not a crime of CIMT in the relief context. And he couldn't and can't show that this statute would be applied outside the categorical definition. Are there any cases in Oregon that have applied it in such a way that it would call into question whether or not it's a categorical crime? I don't know of any. A petitioner did not identify any cases that would show it's a realistic possibility that this would be applied in a way that doesn't fall within the statute. It requires knowing intent to sell or distribute a counterfeit mark, knowing that the mark is counterfeit. So all of the elements of intent to defraud are in the statute, the same as they would be in tall, as the court said. The Oregon court may have felt the same way about this crime, as Judge Fletcher was questioning about. The Oregon court sentenced him to jail for one night and that was his punishment. That doesn't sound like a very serious crime or a crime that shows he was such an immoral person that he shouldn't be allowed to stay in the United States. His sentence was for a year and it was suspended. But yes, he was sentenced to a year. And ultimately, the state of the law is that petitioner is removable and ineligible for cancellation of removal. The government's position is that petitioner's removable because he entered illegally and that's uncontested. The government's been trying to change its position, it says. It may take a while to get to the level that you're representing, but the Attorney General has certainly made it clear that, or maybe the Attorney General is not the one. Maybe it's the Department of whatever it is, Janet Napolitano, not Eric Holder. But somebody has said they're going to try to see that the people who are subjected to this penalty and that they came here at the age of five like this person, not trying to defraud the United States of being brought by your parents, that they're not such evil people just because they came in and that they're going to try to only deport people with serious crimes that they're establishing priorities. That doesn't seem to have sunk down to some levels of either the Justice Department or whatever that one is. Certainly, I think if you were starting all over, this is not the kind of person you'd be trying to deport. Petitioner does talk about these future consequences, speculative and hypothetical, and to the extent he asks the court to opine on those future consequences, he's asking for an advisory opinion, which is impermissible. If in the future... I don't understand. If in the future there was relief that he wanted to seek, he could move to reopen or attempt to seek it. And all these issues may become relevant at that point. But at this point, the relief he was attempting to seek was cancellation of removal. Has this case ever gone through our mediation people? I believe it was dropped from mediation early on. But here, it's not appropriate for mediation. No, I'm asking a different question as to appropriateness. I don't think it went through. I think it was dropped. Petitioner's counsel may know, but I think it was dropped as not appropriate. The question may be better addressed to the other side. I'm pretty sure it did not go through and may have been considered and dropped. Who would have dropped it? The people in the mediation unit? Yeah, if it's not initially scheduled for mediation. The petitioner here, the government's position is that this case is pretty straightforward. He's ineligible based on his illegal entry. Or excuse me, he's removable based on his illegal entry. He's ineligible for cancellation removed because he failed to raise and failed to exhaust any challenge to the lack of a qualifying relative. And that is why he cannot prevail on his petition. No, it could take a sensible government that's willing not to use its prosecutorial discretion to the maximum. I don't think that Fletcher was questioning at this point whether you might have a good legal case. You might deport a lot of people who came when they were babies. But they may be evil people also. And that may be the correct interpretation of the law, that the government has the right to do that. I think Judge Fletcher was asking about mediation, where the government can escape the bind it puts itself in by using its prosecutorial discretion. And if the question really was whether that had been tried, and whether at that point the government might come to its senses. Right. We could certainly ask our client. But here on this scenario where he is removable and ineligible for the relief, there's really simply no further discussion. I mean, the state of the law is. Well, that's just as well because you're way over time. Thanks very much. Thank you. Well, Your Honor, we do agree with one thing that the counsel said. And that is that we do believe this is a straightforward case. And, you know, Well, what's the answer to the question that you have not ever contested ineligibility on the basis of lack of a qualifying relative? Well, Your Honor, first of all, that issue was never raised in the initial briefs to the Board of Immigration Appeals on direct appeal by either party. Both parties expressly, the only issues raised were about the CIMT issue and about whether Mr. Baca's then pending direct appeal made his conviction non-final for immigration purposes. You can look through the DHS briefs and look through our briefs, and neither party raised that issue because it simply wasn't relevant. Both parties knew what was relevant to the case, and that was whether or not the crime-involving moral turpitude finding by the IJ was correct. Did the BIA then decide the issue even though it wasn't raised? Well, yes, they did. The BIA was careful in its direct appeal decision. It stated that it was dismissing the appeal, which affirmed the IJ's decision in full, sustaining the charge of removability based on the CIMT, and specifically acknowledges that the IJ did not pre-terminate relief on the basis of the lack of qualifying relative. Also on page 272, the DHS opposition to motion to dismiss CIMT charge and to pre-terminate relief, it specifically says. Yes, Your Honor. Let me just clarify. I wasn't talking about the briefing before the IJ. I was talking about the briefing before the board, and you're right. It does say in the briefing before the IJ that there's a one-sentence statement that he lacks a qualifying relative. And the IJ asked about whether or not there would be a qualifying relationship on the basis of the pending marriage. So it was clearly an issue that was before the IJ. But there was no finding from the IJ, nor from the board, and any such finding by the board would have exceeded its authority because it's not authorized to make factual findings on appeal. The other point I wanted to address is that this is not an advisory opinion by this court on the issue of the CIMT charge. I mean, as it stands right now, we're not talking about speculation. We're talking about a finding by the highest administrative body on immigration issues. It's binding on the State Department. It's binding on all government officers of the United States that Mr. Baca is inadmissible to the United States. And, you know, the counsel's contention that the board somehow didn't sustain this charge. I mean, I've read a lot of board decisions, and the board can grant appeals as to one part of the case and still deny relief. They can say, we're going to reverse the IJ's decision sustaining the CIMT charge, but affirm on the basis that he entered without an inspection and lacks a qualifying relative. That's not what happened here. If you read the board's decision, dismisses the appeal, and does not reverse the IJ's finding that he was inadmissible for having committed a crime involving moral turpitude. That charge was sustained. The BIA did agree with the IJ's determination that there was no qualifying relative. Even though there was not an express finding by the IJ, it was within the IJ's questioning of the petitioner. Well, I don't believe that the board... I don't believe that the board... There was no factual finding by the IJ, so the issue was not raised by either party on the direct appeal to the board. So I'm not sure why the board would have reached that issue. I think there was a footnote in the board's decision that says the IJ did not pre-term at relief on that basis, and then it goes on to discuss the CIMT issue. Could you clarify, to the degree that you can, whether this went to mediation? If so, what happened? Yes, it did go to mediation, and we were willing to continue in mediation, but the government's counsel decided to proceed. It wasn't the government's counsel here today. It was a prior counsel for the government. It indicated that their client was not willing to settle the case. So that's why the case... When you say it went to mediation, was this pre...? This was before the briefing. This was last summer, if I'm remembering correctly. Basically, it was placed in the mediation program when we originally filed the motion to reopen to allow that to be decided, and then once the motion to reopen was decided, we were really pushing the fact that there was a pardon granted and that we believe that the government should exercise prosecutorial discretion in the case. The government declined to do so. Was the mediation before the pardon? The mediation was both before and after. The petitioner would be happy to go back to mediation in this case if the court would direct it. Are you aware of any Oregon case that has interpreted the statute in such a way as to call into question its categorical application? Your Honor, I'm not aware of any Oregon cases, but under this court's decision in Duaneus Alvarez, if the text of the statute expressly includes a broader range of conduct, we're not required to find state court opinions on it. But it has to be something that's not just theoretical, but something that's in the realm of practicality, not just anything you can dream up in your mind. So generally, we look at how the state courts have interpreted the statute to answer that question. I understand that. I did do a search on that, and there were maybe one or two total decisions in the Oregon state courts on this statute. So it's not a statute that's been addressed very much by the courts. I see I'm well over time. So we are asking that you grant the petition. I've got another question. Yes, Your Honor. I'm sorry to detain you, but the question is I want to make sure I understand your categorical argument. Is your categorical argument that mere possession is enough under Oregon law or possession with intent to distribute free of charge is enough? The Oregon statute reaches possession with intent to distribute. Distribute, in your view, includes give away to somebody. Absolutely. But mere possession without intent to distribute does not qualify,  That is correct, Your Honor. And you have no cases in which there's been a prosecution for distribution free of charge. That is true, but as I said, there's maybe one or two total cases on this statute in Oregon. So it's not this issue. There's been very little discussion of this statute at all in the Oregon courts. No, I have not found a case of that. But the language is pretty clear. I think you may be fine doing this, Alvarez, in the sense of distribution. It doesn't say sale. It says sale or distribution. Obviously, they've already taken care of sale, distribution. It's not a sale. It's going to be a distribution that doesn't entail a sale. I'm not sure I need to find a case. It's right there in the language. That's our argument, Your Honor. Okay. Thank you. We'd ask the panel to retain jurisdiction over any future appeals. Thank you. Thank you both very much. The cases argued will be submitted. The next case for oral argument.
judges: Reinhardt, Fletcher W. , Rawlinson